Mark F. James (5295)
Mitchell A. Stephens (11775)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, UT  84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666
 mjames@hjdlaw.com
 mstephens@hjdlaw.com

Emily E. Duke (Pro Hac forthcoming)
Duke Law Office, PLLC
P.O. Box #16178
St. Paul, MN 55116
Telephone:  (651) 387-1227
 eduke@dukelawoffice.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| Novus Franchising, Inc., a Washington Corporation, | * | |
| | * | |
| | * | **VERIFIED COMPLAINT** |
| Plaintiff, | * | |
| | * | Case No. 1:16-cv-00078-BCW |
| v. | * | |
| | * | Magistrate Judge Brooke C. Wells |
| Gary N. Brockbank, individually, and Jane/John Does 1-10, | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |
| | * | |

Plaintiff Novus Franchising, Inc., hereby complains and alleges against Defendant Gary

N. Brockbank ("Defendant" or "Brockbank") as follows:

1

## PARTIES

1.      Novus Franchising, Inc. ("Novus") is a Washington corporation with its principal place of business in St. Paul, Minnesota.

2.      Upon information and belief, Gary N. Brockbank ("Brockbank" or "Defendant") is an individual residing in Bountiful, Davis County, Utah; Brockbank is a former franchisee of Novus and also personally guaranteed performance under the franchise agreements at issue.

3.      Upon information and belief, Brockbank may be working in concert with other individuals residing In Bountiful, Davis County and/or Salt Lake City, Salt Lake County, Utah, and whose identities are not known with certainty at this time (Jane/John Does 1-10).

## JURISDICTION AND VENUE

4.      This is an action for unlawful trademark infringement, false designation of origin, and unfair competition under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, breach of contract, and misappropriation of trade secrets and confidential information.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction under 28 U.S.C. § 1367.

5.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the District of Utah, Defendant is a residents of Utah, and this Court has personal jurisdiction over him.  In addition, the parties' contracts contain a venue selection provision allowing Plaintiff to bring any action for injunctive relief in Utah.

## FACTS

The Distinctive Novus® System

6.      Novus grants franchises to operate Novus® businesses using its processes and

business system, along with Novus® trademarks, service marks, slogans and logos.  (the "Novus® Marks").

7.     Novus has invested significant resources to develop a valuable and distinctive business system for operating an automotive and other glass repair, replacement and installation business of unique character and quality using products, technologies, and services associated with the Novus® Marks (the "Novus® System"); this System is unique for several reasons:

   a.  Novus (and its predecessor entities) is the only company in the auto and other glass repair industry that has almost 45 years of experience repairing windshields;

   b.  The windshield repair equipment that Novus franchisees lease (from Novus' affiliate), is patented;

   c.  The Novus® System is ecologically friendly, performing an estimated one million windshield *repairs* per year, with franchisees having the highest repair rate in the industry, repairing more than 50% of their windshields instead of replacing and disposing of them in landfills

   d.  Novus offers a lifetime guarantee on windshield repairs, and a two year workmanship guarantee on auto glass replacement, that is honored across the NOVUS network;

   e.  Novus is the only national company to offer Long Crack Repair (cracks over 6 inches);

   f.  Novus provides franchisees the ability to service National accounts in their APR's, servicing numerous National Accounts across the USA.

8.     Among the Novus® Marks, Novus possesses and uses the following trademarks registered with the U.S. Patent and Trademark Office:

| Mark | Registration Date | Registration Number |
| --- | --- | --- |
| NOVUS (for plastic polish) | 8-10-1976 | 1,045,704 |
| NOVUS | 9-18-1984 | 1,295,361 |
| NOVUS | 5-5-1987 | 1,438,701 |
| NOVUS WINDSHIELD REPAIR and | 11-3-1992 | 1,729,876 |
| NOVUS | 4-9-1996 | 1,966,303 |

| Mark | Registration Date | Registration Number |
|------|------------------|---------------------|
| NOVUS AUTOGLASS REPAIR AND REPLACEMENT | 4-2-1996 | 1,965,206 |
| NOVUS AUTOGLASS | 10-14-1997 | 2,105,684 |
| NOVUS DING DEVIL design mark | 7-7-1998 | 2,171,794 |
| NOVUS GLASS | 6-3-2008 | 3,441,544 |
| NOVUS GLASS design mark | 6-24-2008 | 3,455,533 |
| NOVUS GLASS and design | 9-16-2008 | 3,502,594 |
| NOVUSGLASS REPAIR & REPLACEMENT and design | 10-14-2008 | 3,518,345 |
| NOVUS GLASS REPAIR & REPLACEMENT design mark | 10-14-2008 | 3,518,346 |
| NOVUS GLASS THE WINDSHIELD REPAIR EXPERTS design mark | 5-20-2008 | 3,433,099 |
| NOVUSGLASS AUTOGLASS REPAIR & REPLACEMENT and design | 12-31-2013 | 4,457,801 |
| NOVUSGLASS AUTOGLASS REPAIR & REPLACEMENT and design | 12-31-2013 | 4,457,802 |
| REPAIR FIRST, REPLACE WHEN NECESSARY | 5-23-2000 | 2,351,127 |

9.      Also among the Novus® Marks, under an agreement with TCG International,

Inc., Novus has the right to license and does license the following marks to its franchisees:

| Mark | Registration Date | Registration Number |
|------|------------------|---------------------|
| The Windshield Repair Experts Design Mark | 11-12-13 | 4,431,147 |
| Novus Glass Auto Glass Repair & Replacement Color Design Mark | 12-31-13 | 4,457,802 |
| Novus Glass Auto Glass Repair & Replacement Black and White Design Mark | 12-31-13 | 4,457,801 |

10.      Novus franchisees are required to display the Novus® Marks; utilize Novus'

business methods; meet uniformity requirements; attend specialized training; meet standards of quality and service; follow procedures, specifications and instructions; and offer defined product offerings, automotive and other glass installation and repair methods that Novus establishes.

11.     The Novus® System was pioneered in 1972 by Novus' predecessor-company, owned by the Keinath family, who commercialized the idea of windshield repair (rather than replacement of the entire windshield), and were at the forefront of selling the windshield *repair* concept to insurance companies, fleets and vehicle owners; as a result, the Novus® Marks are particularly valuable and unique with customers, especially in long term markets such as Salt Lake County.

12.     Novus licenses, from TCG International, Inc., numerous patents for windshield repair equipment and methods, which are part of the Novus® System; this windshield repair equipment is designed in house by its affiliate (Novus, Inc.) based on 45 years of experience – and all its equipment is either manufactured or assembled in its affiliate's facilities to exacting specifications.

13.     Novus and its affiliates have a unique, world-class UV curable adhesive technology that is sold only to Novus franchisees and was developed in-house at its affiliate, Novus, Inc., with a staff chemist -- Novus' competitors do not make their own products, but rather buy their resins from two adhesive manufacturers.

14.     Novus franchisees receive initial and on-going comprehensive training, including but not limited to: technical training that is hands-on and in person; initial training that lasts at least 4 weeks and consists of proprietary technical and business system training; sales training specific to the windshield repair and replacement market; regular on-going training through

NOVUS University, its franchisee intranet, webinars, Novus' biennial conference and regional meetings; and ad hoc training as required/requested.  Defendant received Novus' training.

15.     Novus offers operational support to its franchisees such as regular telephone support and field visits by its operational staff.  Such support was provided to Defendant.

16.     Novus offers national account pricing from a number of auto glass replacement vendors, as well as a rebate program for purchases from select vendors. Defendant was given the benefit of such pricing and rebates (which were applied to his outstanding amounts due and payable to Novus).

17.     For marketing and support, Novus offers a national SEO/SEM program to all franchisees, as well as access to marketing resources to offer suggested marketing programs and answer questions.

18.     Novus provides sales and business development by offering immediate access to the two largest third party insurance partners (Safelite Glass Network and LYNX Services), as well as access to multiple National Accounts.  Defendant took advantage of the benefits of such partnerships and accounts.

19.     The resin used as part of the Novus® System is proprietary and treated as a trade secret, in that the formula is kept in a locked safe, only the staff chemist and the CEO have access to the resin formula, and the chemist personally makes the resin batches that are sold to franchisees; the training and methods provided by Novus to its franchisees are proprietary, provided only to franchisees, and taught by a qualified instructor who is also a Novus employee. The resins, and the processes and methods that are the subject of the training, derive independent economic value because they are proprietary.

6

20.     Each Novus franchisee receives proprietary operating manuals for operations, windshield repair, auto glass replacement, and brand identity (jointly the "Operations Manual"); this Operations Manual is only provided to Novus franchisees in paper copy; each Operations Manual has a serial number that is assigned to a specific franchisee.

21.     In order to further protect the confidentiality of the Operations Manual, Novus does not post it on its internet-based franchisee portal; it does however, post videos for franchisees to access, which are secured so they can only be viewed on the franchise portal and are password protected.

22.     Mobile Unit franchisees are granted the non-exclusive right to operate a Novus franchised business in a geographically defined area of primary responsibility ("Area of Primary Responsibility" or "APR") using specially-equipped vehicles and patented equipment.

Defendant's Acquisition of Windshield Repair Know-How through the Novus® System.

23.     Prior to his relationship with Novus and its affiliates, Defendant operated a retail location for automobile windshield replacements; by franchising the Novus® System, he received the aforementioned distinctive benefits thereof, as well as, among other things: training, support and operational procedures (including confidential operations manuals) that enabled him to repair auto and other glass, operate mobile units (for performing work wherever a customer's automobile was located, e.g., at work or at home), expand his product and service offerings, access to material and product suppliers who provided national account discounts and (for select suppliers) rebates to Novus franchisees, as well as use of the Novus® Marks.

24.     Defendant has been a Novus franchisee since the time that Novus (or its predecessor owned by the Keinath family) began franchising, and over the years he acquired up

to 13 mobile unit franchises with Areas of Primary Responsibility for numerous Counties in Utah and Wyoming.

The Franchise Agreements at Issue.

25.     On or about February 1, 2008, Defendant renewed eight mobile unit franchises to operate in Areas of Primary Responsibility for the Utah Counties of Salt Lake, Tooele, Summit, Wasatch, Davis, Utah, and Weber ("Defendant's APR" or "the Seven-County Area."  An exemplar of one of these Franchise Agreements is attached hereto as Exhibit A; aside from the APR, the other agreements are identical.  (Hereinafter, all eight agreements will be referred to as the "Franchise Agreements.")

26.     Defendant also personally guaranteed the franchise obligations.  (*See*, Personal Guaranty at end of Exhibit A.)

27.     The term of the Franchise Agreements was ten (10) years.  (Franchise Agreements ¶ 3.1.)

28.     As a franchisee and personal guarantor, Defendant acknowledged that the Novus operations manuals are the property of Novus (Franchise Agreements ¶ 7.5) agreed to comply with Novus' operations manuals (Franchise Agreements ¶ 7.1) and maintain its confidentiality:

> at all times during and after the term of this Agreement to treat the Operations Manual, any other manuals [Novus] create or approve for you to use in the operation of the Business as proprietary and confidential, and you will use all reasonable means to keep all information in these manuals confidential.  You and your employees will not copy, duplicate, record or reproduce any portion of the Operations Manual or make it available to any unauthorized person.  You will not use any portion of the Operations Manual to operate any other business or for any purpose except the operation of the [franchised Novus] Business."

(Franchise Agreements ¶ 7.2.)

29.     Defendant also agreed to maintain the confidentiality of other information

8

provided to him by Novus.  (Franchise Agreements ¶ 7.4)

30.     Defendant was also required to report his Gross Monthly Revenues.  (Franchise Agreement ¶15.3.)

31.     Defendant was also required to pay Novus a monthly royalty in accordance with an agreed calculation, and subject to a monthly minimum fee of $350 per franchise, or $2800 for all eight franchises.  (Franchise Agreements ¶¶ 6.1(a) - (c) and 6.2.)

32.     Defendant agreed that his failure to timely pay royalties would result in late payment charges (Franchise Agreements ¶ 6.5.), and subject him to early termination (Franchise Agreement ¶ 19.3).

33.     Defendant agreed that he would pay Novus' costs and expenses, including attorneys' fees, "incur[red] for the collection of past due Royalty Fees" or "incur[red] in successfully enforcing any term, condition or provision of this Agreement, in successfully enjoining any violation of this Agreement. . . ."  (Franchise Agreements ¶ 24.3.)

Defendant's Default and Termination.

34.     Defendant failed to timely report his gross revenues (for calculation of the royalty payments) and pay royalty fees under the Franchise Agreements.

35.     On or about December 23, 2015 Novus sent Defendant a Notice of Default based on his failure to timely report his Gross Revenues and pay his royalty fees under the Franchise Agreements; Novus provided him thirty days to cure the defaults.  A copy of the Default Notice is attached hereto as Exhibit B.

36.     Defendant cured some of his revenue reporting defaults and made some payments, but failed to timely cure the nonpayment default; by May 2016 he still owed over

$50,000 to Novus.

37.     On or about May 23, 2016, after attempting to work with Defendant, Novus was

forced to terminate Defendants' Franchise Agreements for failure to cure the nonpayment

default.  A copy of the Termination Notice is attached hereto as <u>Exhibit C</u>.

38.     The termination became effective May 26, 2016.

<u>Defendant's Post-Termination Obligations.</u>

39.     As part of his post-termination obligations, Defendant was required to take the

following steps:

a.   "Cease using the name Novus® name and the [Novus®] Marks . . ." (Franchise
     Agreements ¶ 21.1);

b.   "Submit Gross Revenues Reports for all period through the date of expiration or
     termination that have not been previously provided" (Franchise Agreements ¶
     21.2(b));

c.   "Pay all Royalty Fees and other amounts you owe [Novus] or [its] affiliates"
     ((Franchise Agreements ¶ 21.2(b)).

d.   "Return to us by first class prepaid United States mail the [Novus] Operations
     Manual" (Franchise Agreements ¶ 21.2(c));

e.   "Return to us by first class prepaid United States mail … all advertising materials,
     signage, and other printed materials pertaining to the [Novus] Business System"
     (Franchise Agreements ¶ 21.2(c));

f.   "Provide [Novus] with a copy of all your customer records" (Franchise Agreements ¶
     21.2(d));

g.   "Inform your suppliers in writing of the … termination and send [Novus] a copy of
     such communications" (Franchise Agreements ¶ 21.2(e));

h.   "Change the appearance of the Retail Location and any vehicles used in connection
     with the Business so that they will be easily distinguished from the appearance of
     retail locations and vehicles used in Novus® businesses" (Franchise Agreements ¶
     21.2(f));

i.   "Cancel any assumed name or similar registration filed under Article 13.4" of the

Franchise Agreements (Franchise Agreements ¶ 21.2(g));

j.   Comply with post-termination non-compete obligations as set forth in Article 22.3 of the Franchise Agreements for a period of two years after the termination.

40.   The post-termination non-compete states that Defendant agrees that:

you [Defendant], . . . the Personal Guarantors and the members of your and their Immediate Families <u>will not</u>, for a period of <u>two years</u> after the termination . . . of this Agreement, for your or their own account or as an employee, agent, consultants, partner, officer, director, member, or owner of any other person, firm, entity, partnership, company or corporation

(a)  Seek to employ any person who is at that time employed by us or by any Novus® franchisee without the prior consent of their employer,

(b)  Own, operate, lease, franchise. License, conduct, engage in, consult with, be connected with, have any interest in, or assist any person or entity engaged in any or other business that is in any way competitive with or similar to the Business System or the Business (including any glass repair and/or glass replacement or installation business) which is located within

   i.   Your APR,

   ii.  Any area of primary responsibility we grant to any other Novus® franchise or business, or

   iii. Within ten miles of any business location of any Novus® franchise or business in the United States and its possessions.

You, your Owners, and the personal Guarantors expressly agree that the time and geographical limitations set forth in this provision are reasonable and necessary to protect [Novus] and our franchisees if this Agreement expires or is terminated by either party for any reason, and that this covenant not to compete is necessary to permit us the opportunity to resell and/or develop a new Novus® business within your APR.  You also agree that if you, your Owners, the Personal Guarantors, or the members of you and their Immediate Families violate this covenant not to compete, the term of the non-compete will be extended for any person engaged in violating this covenant not to compete, until two years after the violation has ceased.

(Franchise Agreements ¶ 22.3 – emphasis added, formatting changed for ease of reading here.)

41.   Defendant agreed that Plaintiff could obtain an injunction and specific

performance for post-termination obligations, and specifically that Novus would:

> have the right to petition a court of competent jurisdiction for the entry of
> temporary restraining orders, temporary and permanent injunctions and orders of
> specific performance (a) enforcing the provisions of this Agreement relating to (i)
> the Marks and the Business System, (ii) [Defendant's] obligations on termination
> or expiration of this Agreement, . . . (iv) the confidentiality of the Operations
> Manual and other confidential information. . . .

(Franchise Agreements ¶ 25.1.)

42.    Defendant further agreed that Novus would "be entitled to obtain this injunctive

relief without posting a bond or, if a court nevertheless requires a bond, by posting a bond set by

the court in an amount not to exceed $5000."  (Franchise Agreements ¶ 25.1.)

Defendant's Continued Operation and Use of the Novus® System and Novus® Marks.

43.    Despite the termination, Defendant failed to de-identify his business and, upon

information and belief, Defendant has continued to own and/or participate in the operation of his

business, including the operation of mobile units; the business continues to operate as a Novus®

automotive and other glass repair, replacement and installation business.  Specifically, upon

information and belief, Defendant, with the assistance of his wife and others in concert with him

have:

a.   Continued to operate the business as a Novus® business;

b.   Continued to use the Novus® Marks (see Exhibit D – photos)

c.   Continued to answer the phone at his business as "Novus Auto Glass" and offer
     mobile unit services (see Exhibit E transcript of mystery shopper call; MP3 file
     available on request); and

d.   Continued to issue invoices with the "Novus" name on them (see Exhibit F – June 11,
     2016 invoice obtained by Novus employee Don Ford for work performed by
     Defendant's business).

44.    Upon information and belief, Defendant has failed to modify the appearance of

his business and de-identify it so that it can be easily distinguished from the Novus® system, and

he has failed to return any/all materials containing Novus® Marks, including but not limited to

signage, advertising materials, and other printed materials pertaining to the Novus business; upon

information and belief, is using or allowing unauthorized persons to use the Novus® Marks and

materials bearing those marks for the operation of a competitive business.

45.     In addition, Defendant has failed to pay outstanding amounts owing to Novus,

which totaled $54,026.16 as of May 17, 2016 and which continue to increase as late fees accrue.

46.     Defendant has failed to return the Operating Manual.

47.      Upon information and belief, Defendant is using or allowing unauthorized

persons to use the manuals for the operation of a competitive business.

48.     Defendant has failed to provide Novus with a copy of his customer records.

49.     Defendant has not provided Novus® with a copy of any such notification and,

upon information and belief, has failed to notify his suppliers that his Franchise Agreements

were terminated.

Irreparable Harm to the Novus Franchise System and Goodwill.

50.     Novus has attempted to re-franchise Defendant's former territory, however to date

it has been unsuccessful, in part due to the aforementioned conduct.

51.     Upon information and belief, Defendant has spoken to a number of other long

standing franchisees and has stated or suggested that Novus will not enforce its rights under the

Franchise Agreements against him or others, should they choose to follow suit.

52.     Novus is also being irreparably harmed by, and cannot quantify in monetary

terms, disruption to its franchise network, and its inability to sell new franchises in the

Defendant's APR so long as Defendant and those in concert with him continue to operate their business using the Novus® System and the Novus® Marks.

53.     Novus is also being irreparably harmed, and cannot quantify in monetary terms, because Defendant and those acting in concert with him have set up a start-up competitor to Novus in the Seven-County Area using the Novus® System and unique glass repair techniques.

54.     A major sales channel for Novus franchisees, including Defendant, is repeat business through insurance adjustors and agents who refer their insureds to the local Novus franchise for auto glass repair or replacement after an accident; because of this repeat business, customers build up loyalty to the Novus® brand.

55.      Another major sales channel for Novus franchisees, including Defendant, is repeat business from local employers and companies who own fleets of automobiles and other vehicles, and contract with Novus franchisees to repair and replace auto glass on their fleets; because of this repeat business, customers build up loyalty and good will to the Novus® brand.

56.     As a result, Novus is being irreparably harmed by, and cannot quantify in monetary terms, the loss of customer good will and customer confusion caused by Defendant's conduct, and those acting in concert with him.

**COUNT I**
**INJUNCTIVE RELIEF: POST-TERMINATION NON-COMPETE**

57.     All previous paragraphs are re-alleged and incorporated by reference.

58.     Defendant has breached the post-term non-compete obligations of the Franchise Agreements by directly or indirectly owning and/or participating in the operation of an auto glass repair, replacement and installation business, despite the termination of the Franchise Agreements.

14

59.    Unless Defendant and those acting in concert with him are enjoined from owning and/or participating in the operation of an auto glass repair, replacement and installation business, Novus will sustain irreparable harm because, Defendant and those acting in concert with him continue to, among other things:

a.  upon information and belief, use Novus' Operations Manual and the processes and procedures set forth therein and/or to provide them to others' for their own use and benefit,

b.  upon information and belief, use the Novus® System and/or to provide it to others for their own use and benefit,

c.  display Novus' registered trademarks in marketing materials and signage, and

d.  upon information and belief, use and/or provide to others for their use, Novus's confidential information, know-how and training;

Defendant's conduct damages the goodwill associated with the Novus® System.

60.    As a result of this conduct, the goodwill associated with Novus' trademarks, and Novus' franchise system as a whole will be irreparably harmed if Defendant is permitted to continue to breach his post-termination obligations under the Franchise Agreements because, among other reasons:

a.  There is a strong connection between Novus' ability to stop a former franchisee from competing and its ability to locate and sign agreement(s) with replacement franchisees;

b.  there is a strong connection between Novus' ability to stop a former franchisee from competing and it's goodwill;

c.  Defendant's continued operation is making it harder for Novus to re-franchise the APR formerly franchised to Defendant; and

d.  Defendant's continued operation is sending negative messages about Novus to other Novus franchisees, for example, Defendant's actions are setting an example that franchisees can leave the leave the Novus® franchise, not pay their royalties, and continue to operate royalty-free if they are unhappy with Novus.

61.     Novus has invested considerable resources in the development of its System and has taken reasonable steps to maintain the confidentiality of same.

62.     Novus does not have an adequate remedy at law.

63.     Defendant and those acting in concert with him should therefore be permanently enjoined from breaching the Post-Term Non-Compete provisions and confidentiality provisions of the Franchise Agreements and should be ordered to immediately cease all business operations.

64.     In addition, pursuant to the Franchise Agreements, Defendant must pay Novus' reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT II
## SPECIFIC PERFORMANCE

65.     All previous paragraphs are re-alleged and incorporated by reference.

66.     Defendant agreed that, upon termination of the Franchise Agreements, Defendant would:

a.  Cease using the Novus® name and all Novus® marks (Franchise Agreements ¶ 21.1);

b.  "Submit Gross Revenues Reports for all period through the date of expiration or termination that have not been previously provided" (Franchise Agreements ¶ 21.2(b));

c.  "Return to us by first class prepaid United States mail the [Novus] Operations Manual" (Franchise Agreements ¶ 21.2(c));

d.  "Return to us by first class prepaid United States mail … all advertising materials, signage, and other printed materials pertaining to the [Novus] Business System" (Franchise Agreements ¶ 21.2(c));

e.  "Provide [Novus] with a copy of all your customer records" (Franchise Agreements ¶ 21.2(d));

f.  "Inform your suppliers in writing of the … termination and send [Novus] a copy of such communications" (Franchise Agreements ¶ 21.2(e));

g.   "Change the appearance of the Retail Location and any vehicles used in connection with the Business so that they will be easily distinguished from the appearance of retail locations and vehicles used in Novus® businesses" (Franchise Agreements ¶ 21.2(f));

h.   "Cancel any assumed name or similar registration filed under Article 13.4" of the Franchise Agreements (Franchise Agreements ¶ 21.2(g));

i.   Comply with post-termination non-compete obligations as set forth in Article 22.3 of the Franchise Agreements for a period of two years after the termination.

These will hereinafter be referred to as the "Non-Monetary Post-Termination Obligations."

67.   Defendant agreed that he and his employees would "not copy, duplicate, record or reproduce any portion of the Operations Manual to operate any other business or for any purpose except the [franchised Novus] Business" (Franchise Agreements ¶ 7.2), but because Defendant has failed to do so, upon information and belief, Defendant and his employees continue to use it in violation of their confidentiality obligations.

68.   Despite request, as of the filing of this Complaint, Defendant has refused to comply with his Non-Monetary Post-Termination Obligations.

69.   As a result of Defendant's failure to comply with the Non-Monetary Post-Termination Obligations, Novus is entitled to specific performance of same.

70.   Pursuant to the Franchise Agreements, Novus is entitled to its reasonable attorneys' fees and costs incurred in bringing this action.

**COUNT III**
**INJUNCTIVE RELIEF AND ACCOUNTING: INFRINGEMENT OF REGISTERED MARK:  15 U.S.C. §1114**

71.   All previous paragraphs are re-alleged and incorporated by reference.

72.   Defendant agreed that his use of the Novus® Marks was subject to the terms and conditions set forth in the Franchise Agreements.

17

73.     Defendant has failed to de-identify his business so that it is not associated with the Novus® Marks.

74.     Defendant and those acting in concert with him have continued to use the Novus® Marks in promotion and/or advertising and/or sale in commerce of auto glass repair, replacement and installation products and services subsequent to Defendant's termination as a franchisee.

75.     Due to infringement of federally registered Novus® Marks by Defendant and those acting in concert with him, customers are likely to be induced to purchase an auto glass repair, replacement and installation products and services from Defendant, and those acting in concert with him, in the belief that those products and services are those approved of and associated with Novus and its unique business system.

76.     Use, by Defendant and those acting in concert with him, of the Novus® Marks following termination of the Franchise Agreements constitutes federal trademark infringement in violation of 15 U.S.C. § 1114 and harms the goodwill of the Marks.

77.     Unless enjoined, infringement of the Novus® Marks, and injections into commerce of products and services bearing such marks by Defendant, and those acting in concert with him, will result in the loss of distinctiveness of the Novus® Marks and the loss of goodwill and reputation attendant thereto.

78.     As a direct result of Defendants' actions, and those acting in concert with him, as described in the preceding paragraphs, Novus has been and is being damaged and has suffered and will continue to suffer irreparable injury.

79.     Plaintiff has no adequate remedy at law.

18

80.     Unless the Court enjoins Defendant and those acting in concert with him from such activity, Defendant will persist in the infringing use of the Novus® Marks.

81.     Plaintiff is entitled to a preliminary and permanent injunction against continued use of the Novus® Marks by Defendant, and those acting in concert with him, in connection with the offer and sale of auto glass repair, replacement and installation products and services, to an accounting of their earnings using the Novus® Marks, its reasonable attorneys' fees, and other relief under applicable law.

**COUNT IV**
**INJUNCTIVE RELIEF AND ACCOUNTING: FALSE DESIGNATION OF ORIGIN**
**UNDER THE LANHAM ACT**

82.     All previous paragraphs are re-alleged and incorporated by reference.

83.     This Count arises under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a) – False Designation of Origin).

84.     Defendant's use of the Novus Mark designations in connection with the offer and sale of auto glass repair, replacement and installation products and services is a false designation of origin as to services made available by Defendant and a false and misleading representation in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

85.     As a direct result of Defendants' actions, as described in the preceding paragraphs, Novus has been and is being damaged and has suffered and will continue to suffer irreparable injury.

86.     Plaintiff has no adequate remedy at law.

87.     Unless the Court restrains and enjoins Defendant from such activity, Defendant will persist in this false designation of origin, which harms the goodwill of the Novus® Marks.

88.     Pursuant to 15 U.S.C. §§ 1125(a) and 1117, Plaintiff is entitled to a preliminary and permanent injunction against continued false designation of origin in connection with the offer and sale of connection with the offer and sale of auto glass repair, replacement and installation products and services by Defendant and those acting in concert with him, an accounting of their earnings and profits, its reasonable attorneys' fees, and other relief under applicable law.

**COUNT V**
**INJUNCTIVE RELIEF AND ACCOUNTING: UNFAIR COMPETITION**

89.     All previous paragraphs are re-alleged and incorporated by reference.

90.     Novus' branded products and services have been offered to the public using the Novus® Marks since long prior to any acts of Defendant complained of herein.

91.     Novus has continually used the Novus® Marks in commerce among the several states of the United States, including the State of Utah, in connection with the offer and sale of auto glass repair, replacement and installation products and services.

92.     Novus' Marks identify and distinguish its goods and services from the goods and services of others.

93.     Long prior to any conduct of the Defendant complained of herein, Novus expended money, time and effort in advertising and promoting its auto glass repair, replacement and installation products and services under Novus® Marks throughout the United States, including the State of Utah.

94.     By virtue of such sales and marketing efforts, the Novus® Marks have become associated in the minds of purchasers and users of its goods and services and in the minds of the general public with Novus and with Novus alone, and a valuable goodwill has been built up in

the Novus® Marks.

95.     Long after the Novus® Marks had become well-known, Defendant and those acting in concert with him commenced to infringe, and continues to infringe, upon the rights of Novus and its Marks by using them after the termination of the Franchise Agreements, and without license or authorization from Novus.

96.     Defendant and those acting in concert with him have used the Novus® Marks and Novus' trade dress in promotion and/or advertising and/or sale in commerce of auto glass repair, replacement and installation products and services, including over the phone to potential customers, by prominent display at the business, and on invoices issued to customers.

97.     Defendant and those acting in concert with him have falsely designated the origin of their auto glass repair, replacement and installation products and services as being affiliated with and originating from Novus and its System and franchise network.

98.     Due to the deceptive practices of Defendant and those acting in concert with him, customers are likely to be induced to purchase auto glass repair, replacement and installation products and services from Defendant (and those acting in concert with him) in the belief that those goods or services are those of Novus and its franchisees.

99.     Defendant's actions, and those of any persons acting in concert with him, constitute federal unfair competition in violation of 15 U.S.C. § 1125(a) and harm the goodwill of Plaintiff's Marks.

100.    Use by Defendant, and those acting in concert with him, of the Novus® Marks and Novus's trade dress following termination of the Franchise Agreements is likely to cause confusion that Defendants' goods and services are sponsored by or affiliated with Novus.

101.    Unless enjoined, infringement of Novus' Marks by Defendant and those acting in concert with him, to falsely describe or represent Defendant's goods and services as those of Novus, and their injection of such goods and services into commerce, will result in the loss of distinctiveness of Novus' Marks and the loss of goodwill and reputation attendant thereto.

102.    As a direct result of the actions of Defendant and those acting in concert with him, as described in the preceding paragraphs, Novus has been and is being damaged and has suffered and will continue to suffer irreparable injury.

103.    Novus has no adequate remedy at law.

104.    Unless the Court enjoins Defendant and those acting in concert with him from such activity, Defendant will persist in the above-described unfair competition.

105.    Pursuant to 15 U.S.C. §§ 1125(a) and 1117, Plaintiff is entitled to a preliminary and permanent injunction against continued unfair competition, by Defendant and those acting in concert with him, in connection with the offer and sale of auto glass repair, replacement and installation products and services, to an accounting of their earnings and profits, its reasonable attorneys' fees, and other relief under applicable law.

### COUNT VI
### INJUNCTIVE RELIEF: FEDERAL TRADEMARK DILUTION

106.    All previous paragraphs are re-alleged and incorporated by reference.

107.    Novus' Marks are famous mark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

108.    The actions and conduct of Defendant as set forth above harm the goodwill of Plaintiff's Marks and constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

109.     Novus is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

110.     By reason of the foregoing, Novus has suffered, and will continue to suffer, irreparable damage to its reputation and goodwill for which it has no adequate remedy at law.

111.     Pursuant to 15 U.S.C. §§ 1125(c)(1) and 1117, Novus is entitled to preliminary and permanent injunctive relief, its reasonable attorneys' fees Novus incurs in connection with this action, and other relief under applicable law.

## COUNT VII
## BREACH OF FRANCHISE AGREEMENTS AND PERSONAL GUARANTIES

112.     All previous paragraphs are re-alleged and incorporated by reference.

113.     Defendant has breached the Franchise Agreements and their respective Personal Guaranties by failing and refusing the pay amounts due as set forth in Exhibit B, plus interest, which continues to accrue.

114.     Plaintiff has also been damaged in the form of lost royalty fee revenue for the remainder of Defendant's franchise terms for the eight Franchise Agreements.

115.     As a result, Plaintiff has been damaged in the amount of $54,026.16 as of May 17, 2016 plus interest/late fees, as well as future royalties for the remainder of the term of the Franchise Agreements; accordingly, damages continue to accrue.

116.     Defendant is also liable to Novus for its reasonable attorneys' fees and costs incurred in the collection of said amounts.

## COUNT VIII
## INJUNCTIVE RELIEF:  TRADE SECRETS AND CONFIDENTIAL INFORMATION

117.     All previous paragraphs are re-alleged and incorporated by reference.

23

118.     Pursuant to the Franchise Agreements, the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01 *et seq.*, and the federal Defend Trade Secrets Act 18 U.S.C. 1836 *et seq.*, Defendant is obligated to refrain from misappropriating Novus' trade secrets.

119.     As a result of the aforementioned conduct, and by continuing to, directly or indirectly, use the Novus® System, and by refusing to return Novus' Operations Manuals, Defendant has misappropriated Novus' trade secrets and confidential information, in violation of his contractual and statutory obligations.

120.     As a result, Novus is entitled to a preliminary and permanent injunction prohibiting the use or disclosure of Novus' trade secrets, its reasonable attorneys' fees, and other relief under applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Novus Franchising, Inc. respectfully requests an order granting the following

relief:

1.   Awarding Plaintiff damages in an amount to be determined at trial including, but not
     limited to:

     a.   Outstanding unpaid royalty fees and late fees;

     b.   Royalty fees due and owing for the remaining terms of Defendant's Franchise
          Agreements; and

     c.   Disgorgement of Defendant's earnings and profits for the period of his unauthorized
          use of Plaintiff's trademarks and the Novus® System.

2.   For a preliminary and permanent injunction enjoining Defendant and his agents, servants,
     employees, and attorneys, and all other persons who act in concert or privity with
     Defendant from the following:

     a.   Competing with Novus, directly or indirectly, for a period of two years by owning,
          operating, leasing, franchising, licensing, conducting, engaging in, consulting with,
          being connected with, having any interest in, or assisting any person or entity
          engaged in any business that is in any way competitive with  or similar to any
          business that installs, replaces or repairs automotive or other glass

          i.    In Defendant's former areas of primary responsibility, which includes the Utah
                Counties of Utah Counties of Salt Lake, Tooele, Summit, Wasatch, Davis, Utah,
                and Weber;

          ii.   In any area of primary responsibility for any Novus franchise or business; or

          iii.  Within ten (10) miles of any business location of a Novus franchise or business.

     b.   Using Plaintiff's operating manuals, processes, techniques, and other confidential
          information.

3.   For a preliminary and permanent injunction enjoining Defendant and his agents, servants,
     employees, and attorneys, and all other persons who act in concert or privity with
     Defendant from the following:

     a.   Using or displaying, directly or indirectly, the Novus trade names or any similar
          names;

25

b.  Using or displaying, directly or indirectly, Plaintiff's trademarks;

c.  Directly or indirectly infringing Novus' registered Marks;

d.  Falsely designating the origin of services and products in connection with the offer and sale of automotive glass repair and replacement products and services; and

e.  Continued unfair competition in connection with the offer and sale of automotive and other glass repair, replacement, and installation products and services.

4.      An order of civil seizure requiring the seizure of property necessary to protect the Novus trade secrets.

5.      Directing Defendant and those acting in concert with him to:

a.  Close Defendant's automotive glass repair, replacement, and installation business;

b.  Cease using and return Plaintiff's operating manuals;

c.  Cease using and return to Plaintiff or destroy all tangible materials bearing Plaintiff's trade names and trademarks; and

d.  De-identify Defendants' former Novus® franchised business, including any vehicles and buildings.  This includes, but is not limited to: removing distinctive designs from the walls; removing and replacing fixtures and other décor with items not of the general type and appearance used in Novus businesses; removing all Novus signs, decals and/or window decals; and refraining from using any names, slogans, or other items used in or which may be confusingly similar to those used in Novus businesses.

6.      Awarding Plaintiff judgment against Defendant for costs, disbursements, reasonable attorneys' fees and pre-award, pre-judgment and post judgment interest; and

7.      Such further relief as the Court may deem just and equitable.

Dated: June 21, 2016

HATCH, JAMES & DODGE, P.C.


/s/ Mitchell A. Stephens_____
Mark F. James
Mitchell A. Stephens



DUKE LAW OFFICE PLLC

/s/ Emily E. Duke_____
Emily E. Duke

*Attorneys for Plaintiff*

## VERIFICATION

Keith Beveridge, being duly sworn, states that he is the Senior Vice President of Novus

Franchising, Inc., Plaintiff in the above-entitled cause, and that he verifies the foregoing

Verified Complaint for and on behalf of said Plaintiff, and is duly authorized to do so;

that certain of the matters stated in the foregoing Verified Complaint are within his

personal knowledge but some are not; however, the information is based on facts

compiled from employees and/or business records, and, accordingly, the undersigned is

informed by said employees that the facts stated herein are true and correct.

Keith Beveridge

Subscribed and sworn to before me,
this 17th day of June 2016.

Notary Public

KRISTA JO KNOWLES
Notary Public - Notarial Seal
My Commission Expires
January 31, 2020